of appeals. We have four cases to be submitted today on oral argument. I expect that we'll hear the first two and then take a brief recess and then finish the docket. We begin in the United States v. Hegwood. Mr. Sokoloff. May I please the court? Race Nova issues in this case. Thank you, Your Honor. I sure will try. The district court reversibly erred when it imposed a sentence under the First Step Act but refused to apply current binding Fifth Circuit law showing that Mr. Hegwood is not a career offender. The First Step Act provides a court that imposed a sentence for a covered offense may impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act were in effect at the time of the offense. The district court here applied the First Step Act, reduced the maximum sentence to 20 years, and the guideline range to 151 to 181 months, but refused to apply this Court's 2017 case in Tanksley, which showed that Mr. Hegwood is not a career offender and that the career offender guideline should not have been applied. The district court erred in not applying Tanksley. The 404B of the First Step Act explicitly says that the court is authorized to impose a reduced sentence. In Lightfoot, this Court made clear that when a court is imposing a sentence, the 3553A factors, which include the current guidelines, must be applied. What do you do with the word reduced? The word reduced does not dictate what statute it comes under. And by the way, the — it is different to impose a reduced sentence than to reduce an imposed sentence. It didn't say the court can only — can only modify an imposed sentence. It said the court may impose a sentence. Now, when you — the word reduced comes into play because, as treatises like Professor Lefebvre's treatise say, when a statutory maximum is reduced, you are dealing with a less severe crime. So since Congress was reducing the statutory maximum, it was giving the authority to impose a new sentence for a less severe crime. So that's how the word reduced comes into play. And, you know, on top of that, Congress knows how to use the word imposed versus the word modified. It had to be aware of the Supreme Court's opinion in Dillon, which dealt with the word modified, not with the word imposed. And in Clark v. Martinez, the Supreme Court made clear that when a word is used more than once in the statute, it must be given the same meaning. And in this statute, the word imposed is used twice. First, it talks about when the court originally imposed a sentence, and then it gives the court the authority to impose a sentence. So under Clark v. Martinez, you have to interpret those words in the same way. So it's clear that Congress knew how to use the word imposed. It's clear it was aware of Dillon and still chose to use the word imposed. It's clear that it was aware of 3582C2 and 1, which use the word modify, and it chose not to use the word modify. But if we needed any further reason to just not interpret the words as they're written, I believe the court could just look at the First Step Act. The First Step Act, as you — as the court can see from the statute, was passed so that courts could release inmates from the draconian sentences imposed under the draconian crack laws in the 90s and early 2000s. And this particular law, 404, is under Title IV, which is entitled sentencing reform. And the other provisions of the First Step Act give courts the authority to impose a new sentence on elderly and infirm inmates and just to release them from jail. So this is a sentence — this is a statute that was passed by Congress with a different goal than the Fair Step Act, which was passed just to give the benefit of the crack guideline. This is a statute that was passed by a Congress that wanted to release prisoners and give them — give the court the authority to impose new sentences that would free them. And I think, as you'll see in my 28J, I cite Judge Weinstein's opinion — Judge Weinstein's opinion on the purposes of the — the First Step Act and talks about it being a reform statute. So if we needed any reason to impose — to interpret the language as it's written, which we don't because the law tells us that we interpret words by their ordinary meaning and we interpret words presuming that Congress knows the law already, if we needed any further reason, we could just look at the First Step Act and see that it was a sentencing reform provision designed to relieve inmates through a new sentencing from the draconian crack sentences of the 90s and early 2000s. So is it your view that on remand the district court — I recognize it would be a different judge because Judge Harman's retired, but — but the district judge would have full authority to revisit the entire sentence? I believe this is Judge Hughes, Your Honor. I'm sorry to interrupt. Oh, is it? Is it Judge Hughes? I'm sorry. I believe so. My — my mistake. I guess we have — I think that's tomorrow. It is Judge Hughes. My mistake. We have another Judge Harman case. But anyway, that Judge Hughes would have full authority to revisit any of the sentencing here, that he would have jurisdiction to have just sentencing anew on everything? Your Honor, I — in this particular case, I don't believe so. I believe that the Court can focus on what was — number one, what was objected to, which was not imposing Tanksley. Number two, that's what's on appeal, and that's what the Court's going to rule on. And number three, it's going to get remanded. So there are, I guess, two reasons why the Court — it wouldn't open up everything to the Court. Number one, the law of the case doctrine is it's not going to open up everything, because that was only what was objected to. But number two, I think that — that Tanksley is linked to the very reduction that was authorized by the First Step Act. So it's not like even whatever rule you write for this case, it's not going to open up minor role. It's not going to open up organizer leader. It's not going to open up all those other things, because what happened here is the statutory maximum got reduced under the First Step Act, which led to the career offender guideline being reduced. And so what was in consideration, given the First Step Act and what Congress did, was the career offender guideline, and that's what got opened up, and that's why Tanksley applies. So for two reasons, Your Honor, it wouldn't open everything up. And I think the Court could write the opinion narrowly to say, look, this is what got opened up. This is what got objected to. This is what the guideline that was affected, and Tanksley applies to that guideline that was affected. Now, I think there's a second thing that comes into play. I don't know how you write it into your opinion or whether you do, but I think the Court could also recognize that Mathis, as this Court held in In re Lot, which Judge Smith was on the panel, Mathis is not a new rule of law. So you're not applying — you're not saying, oh, this is some new rule. Tanksley applied Mathis, and Mathis, the Supreme Court expressly stated, this is a straightforward application of 25 years of precedent under Taylor. So — and that's why people, when they do, you know, a second habeas petition, can't get relief, because Mathis applied as it always applied to Mr. Hegwood. And so you're not even applying a new rule of law, and you're not even opening up something that's not related to the guideline that came into play and that was objected to. So it's all wrapped around the same ball of career offender and Mathis. For these reasons, Your Honor, we would request that you vacate the sentence and remand without the application of the career offender guideline. Thank you very much. Thank you, Mr. Socolow. You can save time for rebuttal. Ms. Hayden. Good morning. Katherine Hayden on behalf of the United States. Mr. Socolow's brief discusses Tanksley throughout, and you made one parenthetical reference to Tanksley, but didn't really respond at all to his arguments. My antenna always goes up when the appellee really doesn't make any effort to respond to the appellant's main argument. I hope you'll give us a little bit of help on that, because it looks to me as though you're trying to avoid Tanksley. Your Honor, not at all, and if I could, the government's position is, and I think the weight of the authority is on our side on this point, with regards to what can be considered and what shouldn't be considered in this context for purposes of reducing a sentence under the First Step Act, and Tanksley falls right in there. And there's cases that have been decided since the briefing that shed light with regards to predicate crimes under the Career Offender 4B1.1 and intervening case law with regards to those predicates as to whether they still qualify as predicates. And with regards to Tanksley, Tanksley is not retroactive, as counsel acknowledged, and so it has no, it's not a new rule of constitutional law, and to allow consideration of any changes in law that has to do with your application and the guidelines would open the door to many types of changes being applied, and it would also impact the finality of a judgment under 3582, under 2255. I mean, the finality of judgment is very refined under 3582. There's only narrow exceptions, and the government's position is that this sort of procedure, which calls for imposition of a reduced sentence, falls under 3582CB1, which is very, very limited. And the weight of the authority cited in the government's 28J letter states that courts should not be able to consider changes in the law either through amendments in the guidelines or changes in the case law in a limited proceeding such as this that they can only, should only consider similar to 1B1.10. It informs this proceeding as well, that you only look at the change in law that has to do with the penalty changes, the changes that became retroactive, which is increasing the, reducing the disparity between crack and powder. The whole purpose was to reduce the disparity in the penalties. The Fair Sentencing Act already did that, and the guidelines of the Sentencing Commission  October. Let me ask a question, and put into one, this is one step, statutes to one side for a moment. Just take a case, a typical criminal case on appeal with multiple counts and et cetera. And the court reverses, and then sends the case back to the district court. Ordinarily then, we expect the district court to rescind us. And ordinarily then, the package doctrine, et cetera, that we, he looks at the total picture again. And that's, that's the backdrop to this. And the, the idea being that, that the, the judge, although he's sentencing in multiple counts, has his eye on, he or her eye on the ultimate penalty that's imposed. And it's for that reason that they then go back and look again at the sentence in its entirety. So we get a reversal of the one particular issue. We don't just, we don't on the court of appeals excise that five-year count there, even though that's, we know that's the penalty that came out, and just reduce the sentence. And we don't on appeal then modify the, the sentence blow. And that's pretty settled doctrine, I think. That instead it goes back to the district court to sentence afresh. Now that's a backdrop to this. And these, and my question to you is that given that backdrop, the, that's a backdrop to the enactment of these statutes. Why shouldn't this principle apply? And Your Honor, if I could answer that. What statutory language really is sufficiently clear to, to, to not apply that doctrine? Because I think there's differences in the statutes that you're talking about. With regards to, for example, remand on direct appeal, where it's remanded for resentencing, further sentencing proceedings with certain instructions. It's still in the direct appeal process. It's not attacking something collaterally. It's not, it's not invoking 3582, which is very narrow exception to the finality rule. It can be. It doesn't matter whether, what you're doing is that you're reaching into a sentencing package that the district court had before them when they imposed sentence. And you are pulling that out and saying, re-sentence. This may play havoc with the, with the district court's basic objectives and, and constructing the original sentence. And we normally let the district court do that. Admittedly, that, that certainly comes from a reversal outright and not a statute. But what I'm, my question is, what in the language of this statute suggests that, that the outcome that the government insists here, that you don't get the advantage of the, of the, of the fact that, that the, that the one, that the, you've taken out a, another career offender status. He's no longer there. And it makes a very substantial difference in the sentence he would impose. So you're tying the judge's hands into the ultimate sentence. I think that the language on the First Step Act is very narrow. For one thing, even though they've co-coun, or counsel for the other side has focused on the word imposition, it does make very clear that it only applies to reducing a sentence in very limited circumstances. And the limited circumstances are just discretionary. They do not have to occur, similar to 3582. And they only apply to a, a small group of defendants, and those would be the defendants that were sentenced prior to August 3rd, 2010, so that they will have the same position as the ones that were sentenced after August, or August 3rd, 2010. So it's, I think that Congress's intent was to place them in the same position as the defendants that were sentenced after the Fair Sentencing Act. It did not encompass all of these other changes in the law. If you put them in the, if you, if you want to go back and put them in the original position they would have been in, but for the statute, the, the, the child judge would, would ought to be able to, to look at the total package, which means that, that if in the meantime, they, there has been a, the, the, the, that sentence would no longer be valid, then why shouldn't you get the benefit? That's, that's the question that, your answer is that Congress didn't intend it, but I'm having trouble finding where that, it forecloses it. But it's quote, you characterize it as narrow, but that's against the backdrop. But when you, when you reach into the sentencing package and pull out one thing and then, and then the district court does it, I have trouble with that. And with the Fair Sentencing Act, it was very limited and, and they did not allow new sentences under 1B1.10, they commissioned the Sentencing Commission to input things consistent with 3582 and 3553, and they did not allow for defendants to go into all these other things unrelated to the change in the penalties dealing with the disparity between crack and powder. So to allow the, the, the courts to get into all these other things that are unrelated to what Congress did would open up the door to complete new sentencing. My argument to that question would be post 2010, defendants are not getting that. So why would Congress allow the defendants prior to that to get all of these windfalls that other defendants do not get? I, I understand that, that, that's a significant purchase. But, but I, I don't quite get opening the door. It opens the door to what? It opens the door to any type of claim that might have an impact on their sentence other than the change in the penalties with regards to the amounts of crack. Well, it opens the door to simply requiring him to accept a career status which is no longer applicable. But it was applicable at the time he was sentenced in 2010, in January 2010. And so defendants other than somebody whose penalties were changed because of crack, they still have the subject of that initial sentence. They can't come forward and say, I want my sentence reconsidered too. Hey, I, I, I, Tanksley has changed my sentence when Tanksley is not retroactive or when other decisions have occurred or other changes in the law have affected their sentences. Why should they be treated differently? No, the only, opening the door, it only opens the door for those situations in which the FIRST STEP Act applies itself. The same thing? That, that, that, I think we can both agree that the door you're talking about opens no more widely than that, than that particular Act does, which means that, that it, it sends it back of, to, to, to re-sentence, if you will, without regard to that particular statute. Why send it back? Why don't we just, just modify the sentence? And that's what my, our argument is, is that we, if you look at 3582 and you even look at the case of Dillon, which was construing the Fair Sentencing Act, which did exactly the same thing with regards to the guidelines. All Congress did was say, you know what? We're going to allow the defendants prior to 2010 to have that same advantage. But they didn't expect to give them a higher or a more favorable advantage than the post-Fair Sentencing Act defendants, who were, who were being construed for exactly the same thing. They limited it to, all we wanted to do was to recognize the disparity. We're recognizing that disparity. We're not going to open the door to all these other sentencing claims under 3582. So if you look at Dillon even, it looks at the narrow approach under 3582c2 and says, look, it's discretionary. It's very limited in its scope. You aren't, you don't get a hearing. You don't have counsel. All of the things that are consistent with a, a, a complete re-sentencing are not present. In fact, when you look at these other statutes, like 3742, that allow you to go back and look at the whole package, the sentencing package, it deals with a full re-sentencing, a further sentencing proceeding, vacating the judgment. Here, the judgment is already final. All we're doing is modifying it in a very narrow way that is allowed by the First Step Act. The First Step Act, all it says is, you can, we can, you may reduce, impose a reduced sentence if they fall within that category of, if they had committed the, you can, pursuant to subsections 2 and 3 of the Fair Sentencing Act, if their penalties would have been changed at the time they committed the offense, then they can be considered just as, as the post-2010 defendants were. It does not say, you know, you can re-sentence, you can vacate, you can have further sentencing proceedings. It basically says, impose a reduced sentence, which there's only one provision that would apply in that situation, it's 3582c1b, which the majority of district courts that have addressed this have held is, is the statute that applies because it says you may, you may modify an imposed sentence to the extent allowed by the statute. Well, the statute doesn't say anything about anything other than imposing a reduced sentence as if their penalty ranges had been in existence when they committed the crime under statute. I'll ask you about the statutory language. What you're saying makes, is certainly consistent with Dillon, and there are situations regardless of how remand sentences on direct appeal may work. Congress certainly has created regime in which the new sentencing would solely be on one change in the guidelines and not any other change in the law. But the language of, of the First Step Act that your friend on the other side is quoting to us, it's not the same language as in 3582, and it is talking about imposing a new sentence. Now, it's a lot of weight to put on that one word, though he says it's only used twice in the statute, and the other use means a plenary sentencing that would consider   with you in part that this is not an extraordinary interpretation that you're giving us. It's quite consistent with Dillon. But what about the language in the First Step Act? Why is imposed not actually as meaningful as, as, as defense counsel says? If I could answer that question, Your Honor, I think for three reasons. One, if you look at the way they use the word imposed in the First Step Act, they use it in two different ways. Not that it has different meanings, but it has different contexts. The first time they use it, they say, they talk about you can, if you imposed a, previously, if you imposed a sentence that's a covered offense, meaning it's an offense that has the penalties reduced according to these provisions, that's one context. So it's talking about a previous imposition. And then the second context is you may impose a reduced sentence. And so the courts have construed that, a majority of the courts have construed that to mean that you're talking about a reduction proceeding, and you have to have a conduit, a proceeding, an avenue, which is 3582. And it's consistent with 3582. With regards to how narrow it is, so it is deemed to be referring to a proceeding to reduce. It doesn't use the words further re-sentencing, vacating, re-sentencing, such as the other statutes where those things are allowed, including 2255s. If you look at the 2255 language, they use those words, re-sentencing, vacating. The same thing with 3742 when they're talking about remand for a complete new sentencing, further sentencing. It qualifies that with reduction. And when you're talking about reduction, it's not affecting the finality. The finality of the judgment, the judgment is final. It's just allowing some modification and a very narrow exception to the finality rule. And so if we go beyond that, then we're hampering the rule of finality by allowing, you know, when do we draw the line. In this case, we said, well, you know what, we can consider these other things because we want to. What happens the next time when somebody says, well, what about me? Why can't we consider these other things that have nothing to do with the statute? The statute talks about the change in the statutory penalties based on crack cocaine. It does not say if you were sentenced, you know, you can be sentenced based on what — if you had committed the offense when the Fair Sentencing Act was applicable, when it was enacted. And all it did was change the penalties. The only thing the Fair Sentencing Act did was it incorporated different amounts in 841. It didn't talk about, you know — and so what they're doing here, it seems clear that Congress meant to put those categories or that group of defendants in the same place as the post-Fair Sentencing Act defendants, but not in a better position than those defendants. And I think that, you know, the Court can consider the policy statements. The Court can consider the sentencing — what the Sentencing Commission has done post-Fair Sentencing Act. And it can look at the 3553A factors, including the policy statements, which have already taken into account 3582C. And they've done all the studies, and that's how they came up with these very narrow applications of how you can look at a — you know, a reduction preceding post-Fair Sentencing Act. I hope that answers your question. Suppose Judge Hughes had gone the other way, and the case were here, and you — we — in other words, suppose that you were the appellant here, he had gone the other way. If he had considered all of this — If the government was appealing here, what would be the relief we would grant? If — you know, I — I mean, if the Court went outside of the — okay, because here we had a two-level — We did exactly what the defense — what the defense — Hedgwood wants you to do. If he had gone the other way and interpreted the statute, and you were the appellant here, and we agreed with you, then what would be the relief? The relief, if it was outside of the applicable range, or — I mean, the — Same case. No changes except that he went the other way. I don't know what the relief would be if it was a sentence within the correct range. If the Court came back and said, I think that you're a career — I'm going to reduce your levels by two levels because now they've been affected by the maximum statutory penalty. And so I'm going to do that. You're a career offender, so we're going to reduce that guideline down. In other words, he's — he gave them the relief that he will — the district court ruled exactly the other way, so you're now appealing that. Just flip the side. I want to curate — I see what you're saying, Your Honor. I'm sorry. I think what you're — if the Court had applied taxly and said, I'm not going to give you the career offender provision, I'm going to sentence you way below the career provision. I'll give you — 151 district courts have not accepted this argument, but — his argument, but that — those are — those are just — I mean, at that point, I — the government — Well, what's the answer to my question? If the Court had gone and applied taxly, and we — our position would be that was incorrect, that's outside the scope of this, and we would — you know, that — we would be the — in a position to decide whether to appeal or not, that it was, you know, outside the scope of a First Step Act motion to reduce sentence. Well, you have to say that the district court was in error in re-sentencing for the reason that he considered the — treated him as no longer — he didn't want to treat him as a career offender, which changed the guidelines, et cetera. And so, then, what do we — we reversed, and what do we do? We send it back to the district court to do what? Well, if it was sent back to the district court, the court could not apply taxly. Or do we send it back? Well, it would affect his — it would — it has a large difference between a career offender and what the total offense level would be without the career offender provision. So it would affect his sentence, you know. So with regards to that, it would be sent back to be re-sentenced under the career offender provision, because it still applies. What do you mean, be re-sentenced? I'm sorry. Those terms are used, including — if you — Dillon used the word impose all the way through when he was talking about 3582C2. But yes, I mean, our position would be that he should still be sentenced under the career offender provision. Can the court vary downward? Now we don't have 1B1.10 as mandatory, because that's not incorporated in the First Step Act. Our position would be is the court shouldn't vary downward from the career offender provision based on that information. But I don't think the court's prohibited from varying downward. But if the court was just point-blank saying, I'm not — I'm going to apply Tanksley, I'm — I find the career offender does not apply at all, and it calculated it that way from the beginning, and that was the basis for the decision, we would say that that was outside the scope of the First Step Act proceeding, because the court is considering things totally unrelated to what the First Step Act says in the narrow proscribes of that act, that it's now considering nonretroactive law that has — that is — affects the finality of the judgment, and it's not something that he should — that should be considered in a 3582C proceeding. Otherwise, it opens the door to a lot of this happening in the motions to modify, motions to reduce, and other contexts where people want to get relief from cases. We'd have to impose a new sentence, not modify. No, it would be within — it's already a final judgment. It would just be modifying the sentence to be within where it should be. We already have the original final judgment. That hasn't — that has not been impacted. It's just we're reducing that final judgment. I mean, it's not — we're not increasing it. Now if it was a complete re-sentencing, you could increase it based on the whole package. We're not doing that. We're in a narrow confines of a reduction. In the same situation, we sent it back, he would not be able to reconsider his sentence in light of that change. I'm not sure I understand. I'm sorry, Your Honor. All right. Thank you, Ms. Hayden. Mr. Shklov, if you have time for a vote. Sure. I'm sorry. I have a number of points. First of all, the government asks, why would Congress allow? Why would Congress allow? The Court doesn't have to ask such a speculative question. The Court can just look at the language of the statute and see that Congress, knowing about Dillon, what Dillon said about modified, knowing about 3582c1 and 2, and knowing about case law like this Court's case law in Lightfoot, chose to use the word impose. We don't have to guess. And knowing about Clark v. Martinez. Now, the government says that the Fair Sentencing Act is the same as the First Step Act. It's not. The Fair Sentencing Act only — the First Step Act only adopted Sections 2 and 3 of the Fair Sentencing Act and included nothing about the guidelines or the commission. And I had a lot more to say, but when I heard the end of the government's argument, I decided I just need to say one more thing. The government just said — you can listen to the tape — that 1B1.10 is not part of the First Step Act. That is a concession of this case. We win. Because it's 1B1.10 that says you can only make the changes that the change in the guideline allows. The reason Dillon decided what it decided was is that a sentence modification of 3582c and a sentence modification is only allowed to the extent authorized by law. And the Fair Sentencing Act said — the provisions not in the First Step Act said, okay, we leave it up to the Sentencing Commission to make policy statements that are consistent with this. And the 1B1.10 and its policy statements say you can only modify it to the extent that the guideline is modified. So if you say 1B1.10 is not part of the First Step Act, you've just given away everything. In addition, Your Honors, Congress, as I said, knew how to use the word impose versus modify. The government keeps saying the judgment is final. The judgment is not final. The statutory maximum has been reduced. Congress wants courts to impose a sentence, not to modify one. So the judgment is not final. And, Your Honor, again, I don't have 1B1.10 in front of me, so I'm just going from that's the thing that cabins why you can't go to other guidelines. But even if I'm wrong about that, for all the other reasons I've stated, this Court should read the statute as written, vacate the sentence, and remand for resentencing without the career offender guideline — without the career offender enhancement. Let me ask you this question, just to comment on it. One of my able law clerks advises me that they've searched in a survey that 151 district courts have rejected your argument, at least have not accepted it. What do you — what do we do with that kind of universal reading by the district courts, with the people who administer the statute? Well, I have two answers, Your Honor. The first answer is, in my 28-J response, I submitted courts that — like Payton, and Payton cites a number of cases that go the other way. So it's not uniform. My second answer is more colloquial, and forgive me. Those district courts that say 3582C1 and 2 apply are like the new couple who got the family recipe for the roast beef. It said, you cut off one inch on one end and one inch on the other, and they went to their parents. And they said, why do we do this? And the parents said, because we've always done it that way. Ask your grandparents. And so they went to the grandparents, and the grandparents said, because we've always done it that way, ask your great-grandparents. And so they went to the great-grandparents, and the great-grandparents said, because we didn't have a pan big enough to fit the roast beef, all right? So the answer is that just because we've always done it that way doesn't make it right. Your Honor, I request that you vacate the sentence and remand without the career offender  Thank you. SOTOMAYOR. Thank you, Mr. Sokolow. Your case is under submission. Now, here, United States v. Free.